930 So.2d 1181 (2006)
Traci Christine PAYNE, Plaintiff-Appellant
v.
Robert Charles PAYNE, Jr., Defendant-Appellee.
No. 41,049-CA.
Court of Appeal of Louisiana, Second Circuit.
May 19, 2006.
Rehearing Denied June 23, 2006.
*1182 Mason L. Oswalt, for Appellant.
Donald L. Kneipp, Monroe, for Appellee.
Before BROWN, GASKINS and MOORE, JJ.
GASKINS, J.
In this child custody case, the mother appeals from a trial court judgment rejecting her request to move to Mississippi with the parties' six-year-old daughter. We reverse the trial court judgment and remand.

FACTS
The parties, Traci Christine Gatewood and Robert Charles Payne, Jr., married in March 1998. Traci was a resident of Jackson, Mississippi, but moved to West Monroe, Louisiana, after she married Robert. Of their marriage, one child was born: Elizabeth Grace Payne (DOB 7/16/99). In about November 2003, Robert began an affair with Ms. Gordon. Traci learned of the situation on January 13, 2005, when she received an anonymous phone call at work. She confronted Robert; although he initially denied the affair, he eventually admitted that the allegation was true. He refused to move from the family home when Traci asked him to leave. Later that week Traci learned of a second affair when a man called to inform her that her husband was having an affair with his wife.
On January 20, 2005, Traci filed a petition for divorce. She requested that she be awarded primary custody of Elizabeth. In addition to the father's adultery, she also cited his illegal drug use as making him unfit to have custody. She also sought child support, spousal support and use of the matrimonial domicile. Due to Robert's temperas demonstrated by the temporary restraining order obtained against him by his paramour, Ms. Gordon  Traci sought a protective order to prevent him from threatening or harming her or her family. On January 26, 2005, the trial judge signed an order granting Traci's request for a protective order.
A hearing officer conference was held on April 5, 2005. The hearing officer recommended that there be judgment granting the mother exclusive use of the family home, designation as domiciliary parent of the child under a joint custody plan, child support of $723 per month, and spousal support in the form of payment of the second mortgage on the family home. Robert was awarded alternating weekend visitation, plus certain specified weekday visitation. He was ordered to vacate the family home.
The father filed an objection to the hearing officer conference report, objecting to the findings as to his income surplus and his wife's salary. He also denied sending his wife harassing emails at work and claimed that she had already accepted a job in Jackson, Mississippi. He asserted that he should be awarded custody, use of the home and support. However, on April 22, 2005, the court made the hearing officer's recommendations the interim order of the court.
On April 25, 2005, Traci filed a motion to relocate to Brandon, Mississippi, to accept a job offer in Jackson. Her current employer, Haverty's, had offered her a position which would increase her income by 20 percent and give her opportunities of advancement. The move would also allow her to be close to her parents who live in Brandon. She asserted that the father's financial circumstances were likely to result *1183 in bankruptcy and that she and the child would be forced to move from their current residence. Traci also stated that, should they move to Mississippi, she was willing to modify the custody agreement to give the father substantially the same time with the child.
A judgment of divorce was signed on April 27, 2005.
On April 29, 2005, Robert filed an answer, requesting joint custody and use of the family home. He also filed an objection to the proposed move to Brandon.
The hearing on the motion to relocate began on May 11, 2005, and was continued over several court settings. At the conclusion of the hearing, the trial court denied the motion, finding that Traci had not carried her burden of proving that relocation was in the best interest of the child. According to the factor sheets weighing the various factors under La. C.C. art. 134 and the relocation statute, the trial court found the parents were essentially equal. The court did find the mother surpassed the father on the issue of moral fitness due to his adultery and use of steroids. However, the court noted in its judgment that several aspects of the child's life, such as school, church, dance and gymnastics, were rooted in her current environment.
The mother appeals.

LAW
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, XXXX-XXXX (La.2/6/98), 708 So.2d 731.
A parent seeking to remove his or her child from the jurisdiction of the court has the burden of proving that: (1) the move is made in good faith; and (2) in the child's best interest. La. R.S. 9:355.13; Blackburn v. Blackburn, 37,006 (La.App.2d Cir.1/29/03), 836 So.2d 1222. In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life. La. R.S. 9:355.13.
In making a determination regarding a proposed relocation, a court is required to consider the factors specified in La. R.S. 9:355.12, which are:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation *1184 is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
Although the statute mandates that all of the factors set forth be considered, it does not require a court to give preferential consideration to any certain factor or factors. Curole v. Curole, XXXX-XXXX (La.10/15/02), 828 So.2d 1094. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight and will not be disturbed absent a clear showing of abuse of discretion. Blackburn v. Blackburn, supra.

DISCUSSION
At the outset, we agree with the mother that the trial court implicitly found that her request for relocation was made in good faith. The record fully supports a finding that the mother desired to move for both emotional and financial reasons she wished to move home near her parents to receive their support as she sought to rebuild her life following a devastating divorce caused by her husband's infidelity and to take a higher paying job which would improve the standard of living for both herself and the child.
Consequently, the issue before us is whether the trial court was clearly wrong in finding that the mother failed to carry her burden of proving that the move to Mississippi was in the best interest of the child. After a careful review of the record, we find that the trial court erred in denying the mother's request to relocate to Mississippi.
The evidence indicates that the mother has been the child's primary caregiver since birth. While the mother's life has apparently revolved around her daughter and meeting the needs of the child, the father has had numerous outside interests which have distracted him from family life. These interests included two extra-marital affairs and body building. One of the affairs involved periodic weekend trips with the paramour and frequent, sometimes daily, visits to her home. While some of the father's illicit conduct took place while the child was in school, some of it occurred at times when the father could have been taking care of the child. The body building led to his illegal use of steroids while living in the same house as the child. The father insisted that he kept his drug cache and syringes in a locked box in the bathroom out of the child's reach and that he properly disposed of his used needles; the mother recounted finding syringes in the garbage can when the child was only four years old and the father locking himself in the bathroom for long periods of times. The father admitted throwing out the box only after his wife found out about his affairs. He insisted that steroids are not addictive and denied ever suffering from side effects such as mood swings or aggression.
The evidence does indicate that the father eventually began to take a more active role in the child's life, but only after the failure of his attempts to dissuade the mother from filing for divorce. Although the child has enjoyed a close relationship with the paternal grandparents in West *1185 Monroe, she has an equally loving relationship with the maternal grandparents in Mississippi.
The child was only five years old at the time of trial and was completing kindergarten. At this very young age, she was not yet so invested in any school or activity that relocation would cause a detrimental impact on her development. She had attended different churches with her parents; thus, it could not be said that she was established in one particular church. She has no special needs which would hamper her ability to adjust to a new environment. To the contrary, she is described as "extremely smart" by her maternal grandmother. It is to be noted that the proposed relocation is not to a totally unfamiliar area where she would be surrounded by strangers; to the contrary, it is to her mother's hometown, a place she has visited often and the home of relatives she knows well.
As to the feasibility of maintaining the father's relationship with the child after the relocation, we observe that during the two years he dated the mother before marriage, the father was able to travel from West Monroe to the mother's home in Mississippi every weekend. This indicates that the distance between the two locales is sufficiently close that the father should have no problem continuing his relationship with his daughter. Also, the mother has indicated a strong willingness to continue to facilitate the father/daughter relationship, as she has done throughout the child's life.
The move to Mississippi would present mother and daughter with many opportunities. The Jackson area offers many educational, social and cultural benefits. Financially, the move would allow the mother to increase her salary by 20 percent. It would also open up the possibility of advancement within her company. Given the financial hardships faced by the family in West Monroe, particularly during a period when the father did not earn a salary for many months, the benefits of steady and profitable employment with a company which obviously holds the mother in high esteem are not to be dismissed lightly.
Prior to her marriage, the mother had lived in the Jackson area her entire life. She only moved to West Monroe as a result of her marriage. Now that the marriage has ended due to the revelation of the father's two affairs, one of which was long-term, the mother understandably desires to move home. There she will enjoy the loving support of her family as she tries to build a life for herself and her child. While the father has taken an increased interest in the child, his actions have not necessarily been consistent with cooperative parenting with the mother.[1] The mother cannot be faulted for wishing to return home with her young child.
We find that the trial court was clearly wrong in finding that the proposed relocation to her mother's hometown was not in the best interest of this young child. The relocation offers financial and emotional stability to the child's life, which has already been disrupted by the destruction of her parents' marriage and their ensuing divorce. Whereas a much older child might be inextricably connected to her environment and community to the point that removal would be to her detriment, this child is still so young that her youth affords great flexibility and adaptability. The trial court was manifestly erroneous in placing too much weight on such factors as school ties and activities for such a young child. At this early point in her academic career, a change in schools would be much *1186 less disruptive than it would be if she were older and had years of emotional attachment to a particular school. She has not attended just one church her entire life. While she has taken dance and gymnastics lessons in West Monroe, her mother testified that such lessons are also readily available in Jackson.
We remand the matter to the trial court for implementation of a custody agreement that allows the father alternating weekend visitation and adequate summer visitation.

CONCLUSION
The judgment of the trial court denying the mother's request to relocate is reversed. The matter is remanded for further proceedings in compliance with this opinion.
Costs are assessed against the father.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY, and MOORE, JJ.
Rehearing denied.
NOTES
[1] For example, the evidence indicates that the child was enrolled by her father, without the mother's knowledge, in gymnastic classes which were taught at a time he knew would be inconvenient for the mother.