# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-1052

GARRETT LINN LEBLANC

VERSUS

NICHOLE LEBLANC

**********
ON APPEAL FROM THE
FOURTEETH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-4629
HONORABLE LILYNN A. CUTRER, PRESIDING
**********

**SYLVIA R. COOKS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Jimmie C. Peters, Marc T. Amy and James T. Genovese, Judges.

Genovese, J., dissents and assigns written reasons.

**REVERSED.**

Todd H. Melton
P.O. Box 847
616 Kirby Street
Lake Charles, LA 70601
(337) 439-2979
COUNSEL FOR PLAINTIFF/APPELLEE:
        Garrett Linn LeBlanc

Richard E. Lee
810 Main Street
Pineville, LA 71360
(318) 448-1391
COUNSEL FOR DEFENDANT-APPELLANT:
        Nichole LeBlanc

**COOKS, Judge.**

In this child custody case, the mother appeals the trial court's judgment finding a material change in circumstances occurred and that the best interests of the minor child required naming the father domiciliary parent. For the following reasons, we reverse.

**FACTS**

Garrett Leblanc and Nichole Leblanc were married on June 1, 2002. They had one child together, Pacen Cole Leblanc, who was born on February 6, 2001. On August 23, 2003, Garrett filed for divorce and sought shared custody of Pacen. Nichole sought joint custody and designation as domiciliary parent. On September 13, 2004 the parties stipulated to joint custody, with Nichole designated as domiciliary parent and Garrett provided specific visitation.

On February 14, 2005, Garrett filed a "Rule to Change Custody and for Incidental Relief." Garrett sought to maintain the joint custody of the parties, but sought to be named domiciliary parent. He also sought injunctive relief to prohibit relocation of Pacen pending the hearing and to address the issue of child support if the custody change was granted. Garrett alleged Nichole, who had become engaged, planned on moving from Sulphur, Louisiana to Pollock, Louisiana where her fiancé resided. Nichole was pregnant, and her fiancé had two children of his own through a previous relationship. Garrett was also remarried and resides with his new wife and her two children in Sulphur.

A hearing was held on the Rule to Change Custody. The trial court rendered judgment maintaining the joint custody, but designating Garrett as domiciliary parent. The court also set forth specific visitation for Nichole. The trial court set forth the

following reasons for its judgment:

In determining if the proposed modification is in the best interest of the child, the Court must consider La.Civ.C[ode] art. 134, which sets forth twelve relevant factors. Using these factors as a framework for analysis, the Court will determine if a material change in circumstances has occurred and if the proposed modification is in the best interest of Pacen.

## Material Change in Circumstances

In Garrett's rule to change custody, he alleged that various changes in circumstances such as conflicts in receiving his visitations, Nichole's stability, and Nichole's engagement and anticipated move with Pacen to Pollock, Louisiana. The Court notes at the outset that the distance between Lake Charles and Pollock is insufficient to trigger the application of the Louisiana Relocation Statute, La.R.S. 3:355 et seq. Thus, the relocation statute is not applicable.

If the relocation statues [sic] was applicable, Nichole's notice of her proposed relocation of the child would not constitute a material change in circumstances as per La.R.S. 9:355 (11). However, in the instant case, Nichole has actually relocated to Pollock. As the Second Circuit Court of Appeal noted in *Masters v. Masters*, 756 So.2d 1196, 1200 (La. App. 2d Cir. 4/5/00), *writ denied*, 803 So.2d 975 (La. 2000), "an actual move out of state is a 'material change in circumstances' which allows the court to revisit custody and re-measure the best interest of the child."

While notifying a party of the intent to move with the child may not constitute a material change in circumstances, this Court believes that the party's own testimony at trial that they intend to move with the child should constitute a material change in circumstances. A party should not have to wait until the actual move occurs, when it may not be in the child's best interest, to constitute a change in circumstances if the party makes it clear in their testimony that they intend to relocate. Nichole and her witnesses testified that she intended to move with Pacen to Pollock. In fact, on the last day of trial, Nichole testified that she had moved the preceding weekend.

Other changes of circumstances have occurred which materially affected Pacen. Besides his mother's move and desire to take him with her, Pacen is also reaching school age and a decision needs to be made as to which school he will attend. In addition, Pacen is exhibiting some aggressive behavior which was noted by both parents.

For the numerous reasons discussed above, the Court finds that there have been material changes of circumstances which have affected the welfare of Pacen. Accordingly, the Court shall next consider the factors of La.Civ. C[ode] Art. 134 to determine a custody and access

arrangement that is in Pacen's best interest.

## La. Civil Code Article 134 Factors

For the first time ever, the Court finds that it is not necessary to discuss in detail each individual factor because the parents stand on equal footing for almost every factor.

Nichole and Garrett both love Pacen and have strong emotional ties with him. In addition, they both have evidenced to the Court their capacity and disposition to love Pacen and show affection to Pacen. Nichole and Garrett both have guided Pacen's spiritual growth and evidenced their involvement in the education and rearing of Pacen. Pacen has split his time almost equally between both parents and they have both maintained a stable and adequate environment for Pacen. In addition, both parents appear to have permanent family units. Garrett and his new wife, Daphne, reside together with her two children. Nichole will be residing with her fiancé, Evan Delaney, and his two children in Pollock. She is pregnant and due in February. They intend to marry soon.

Garrett has been employed with the post office for five or six years. Nichole has worked as a hair dresser for several years, at one point opening her own shop. Clearly, the parties both have the ability to provide Pacen with his food, clothing, medical care and his other material needs. The evidence established that neither parent has a significant mental or physical health issue which would affect their ability to parent Pacen. Further, there was not any significant testimony concerning the moral fitness of either party that the Court finds affects Pacen's well-being.

Both parents have been the primary caregiver of Pacen at some point in his life. They both play very active roles in his life and every day activities. Thus, it is no surprise to the Court that Pacen might have expressed to both parents his desire to live with them. However, Pacen is too young for the Court to consider any preference he may have as to where he wants to live. The Court is absolutely confident that Pacen would excel in the home of either parent.

Nichole and Garrett have both shown the Court their willingness and ability to facility [sic] and encourage a close and continuing relationship between Pacen and the other parent. Despite their stipulated judgments, Nichole has continuously offered and agreed to Garrett having additional time with Pacen. Garrett also recognizes the importance Pacen's mother plays in his life. Both parties allow the other unlimited phone calls with Pacen while in their care.

While both parties brought up negative things about the other, which is no surprise in a custody case, the Court finds that none of these things were very significant. Obviously, Garrett and Nichole are not

going to get along perfectly or they would still be together. However, this Court must state unequivocally that Garrett and Nichole are truly a wonderful example of how divorced parents should continue to work together for their children. Pacen is truly blessed to have Garrett and Nichole as his parents.

Nichole became engaged to Evan in May of 2005. Evan is in the National Guard and stationed at Camp Beauregard in Pollock, La. Nichole explained that Evan can be deployed to another country, but his base would always be at Camp Beauregard. She said that they tried to reside locally, but were not able to. Nichole testified that regardless of the outcome of this custody case, she has made her decision to marry Evan and move to Pollock.

As hard as it is, this Court must make a decision as to who should be named domiciliary parent of Pacen. In doing so, it will determine whether Pacen resides in Pollock or Calcasieu Parish. Thus, one of the La. Civ. C. art. 134 factors that is important in this case is the home and community history of Pacen. Pacen will start preschool this year, so he does not have a significant school history yet. However, Pacen does have a history in this community. He has resided in this parish all of his life - either in Vinton or Sulphur. Almost all of Pacen's family lives in this area. Family has played a very important role in Pacen's life. Every week, Pacen spends the afternoon with his paternal grandmother, Dorothy Tony. In addition, Pacen spends a considerable amount of time with his maternal grandmother and her family. Pacen also has family friends that he plays with such as Sam Breaux's two boys. To limit or interfere with Pacen's contact or relationship with his extended family would be a significant change in his life.

Nichole maintains that Garrett's visitation with Pacen will not change significantly if Pacen moved to Pollock with her. She testified that she has a flexible schedule as a hair dresser and will be able to transport Pacen for visitation on a regular basis. However, the Court notes the following example of how things can come up and interfere with well-intended plans. Garrett and Nichole both testified that Pacen was showing some aggressive tendencies and was in need of counseling. They agreed on a counselor and Garrett set it up. Despite the need to get Pacen started in counseling, Nichole canceled her appointment because one of her customers needed their hair done and could only come at that time. If something like this would occur when Nichole needed to transport Pacen from Pollock to Sulphur for his visitation, Garrett might miss out. However, if Pacen was local, other arrangements could be made so that Garrett's visitation would not be missed and Nichole could help her customer. While everyone may have good intentions that Pacen and Garrett's extensive contact will remain intact, things can come up, even though not intentional, which make continuous long-distance contact hard on all parties involved. In addition, the distance would clearly prevent Garrett from being involved in any of Pacen's school activities and/or extra-curricular activities during the week. For a very

involved parent such as Garrett, this would significantly impact on Pacen and Garrett's relationship.

## CUSTODY CONCLUSION

This Court has evaluated and discussed the factors of *La. Civil Code art. 134* to determine what custody arrangement is in the best interest of Pacen. In making a custody decree, the Court should examine all relevant facts:

> In determining what is in the best interest of the children, courts must examine all relevant facts, including but not limited to, stability of environment, standard of living each parent can provide, and the prior history of the child's custody. The role of the court is to determine the best interest of the children based on relative fitness and ability of the competing parents in all respects to care for the children. *Simmons v. Simmons*, 554 So.2d 238 (La.App. 3d Cir. 1989).

*Peyton v. Peyton*, 614 So.2d 185 (La.App. 3rd Cir. 1993)

This decision is not an easy one as both parents bring positive attributes to the care of Pacen. Garrett and Nichole, unlike most parents appearing in family court, have truly made an effort to parent Pacen together amicably. In most instances, they have put any negative feelings they have about each other to the side and have focused on the needs of Pacen. The Court believes that Pacen would do well living with either parent.

However, after hearing all of the evidence, the Court finds that Pacen's interest would best be served by granting domiciliary parent to Garrett. Pacen has a very close bond and relationship with Garrett and all of his extended family. If Pacen relocated to Pollock, the distance would significantly interfere with these relationships. The Court finds that it is in Pacen's best interest to primarily reside with Garrett in a home and community he has always known and thrived in.

Accordingly, the Court grants joint custody of Pacen to Garrett and Nichole, naming Garrett as the domiciliary parent. The Court grants Nichole visitation as set forth in the attached joint custody plan.

Nichole appealed the trial court's judgment, contending it erred in modifying the previous stipulated custody agreement and naming Garrett as Pacen's domiciliary parent.

## ANALYSIS

Because the prior custody decree was a stipulated judgment, Garrett, as the party seeking to modify the existing custody arrangement, must prove (1) there has been a material change of circumstances affecting the welfare of the children since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731; *Weaver v. Weaver*, 01-1656 (La.App. 3 Cir. 5/29/02), 824 So.2d 438.

Our initial inquiry is whether the trial court correctly found there was a material change in circumstances which affected the welfare of Pacen, such that a best-interest analysis under La.Civ.Code art. 134 was necessary. Garrett argued below that Nichole's engagement and anticipated move with Pacen to Pollock, as well as alleged conflicts in receiving his visitations were significant enough to amount to material changes in circumstances.[1]

Nichole contends the trial court erred in finding Garrett proved by a preponderance of the evidence that there was a material change in circumstances. She argues the trial court improperly considered her proposed relocation a *per se* change in circumstances that materially affected the welfare of the children. Louisiana Revised Statutes 9:355.1(4)(b) declares that an intrastate move of less than one hundred fifty miles is not considered a relocation.

Upon review of the trial court's reasons, we find it unclear whether the trial court found the move to Pollock to be a *per se* material change in circumstances. While the court specifically noted that the distance between Lake Charles and Pollock was insufficient to trigger the application of the Louisiana Relocation Statute, La.R.S. 3:355.1 et seq., it also stated that a "party's own testimony at trial that they intend to

---

[1] Garrett also cited an alleged lack of stability on Nichole's part as a further example of a change in circumstances. The record does not support this allegation, and the trial court's reasons specifically noted there was no evidence that the moral fitness of either party "affect[ed] Pacen's well-being."

-6-

move with the child should constitute a material change in circumstances." Assuming that the trial court did not find the move to Pollock was *per se* a material change in circumstances (which would have been improper), at a minimum the trial court found the move, along with Pacen beginning school and some exhibiting of aggressive behavior, constituted a material change in circumstances affecting the welfare of Pacen so as to undertake an Article 134 best-interest analysis. For the reasons that follow, we find this conclusion was erroneous, and reverse the trial court's modification of the previous stipulated decree and return domiciliary parent status to Nichole.

In *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478, this court was presented with a similar factual scenario to the one here. In that case, the trial court found "it was in the best interest of the children to redesignate the father as the domiciliary parent should the mother decide to move from Crowley, the life-long home of the children, to Baton Rouge, the home of her future husband." *Id.* 653 So.2d at 50. On appeal, we discussed when an intrastate move constitutes a material change in circumstances:

> Underscoring the problem which these prospective facts presented, the trial court stated in its written reasons:
>
> > The job [of the trial court] boils down to a balancing of the advantages of moving the children to the new domicile of their mother so they can continue in her care against the possible negative impact of "uprooting" them from the environment in Crowley to which they are so accustomed. (Emphasis added).
>
> Thus, in the present case, the trial court was asked to make a decision *based only upon anticipated facts that may possibly have a negative impact on the children.* Accordingly, we find that the trial court improperly modified a custody decree without a showing of a change of circumstances.
>
> In this same vein, we point out that we failed to uncover any appellate jurisprudence in Louisiana that has held that an intrastate move

was a change in circumstance *per se*. Although the appellate decisions are replete with instances where children were moved out of state, not the equivalent of the facts presented herein, there too we found that not every interstate move has been held to be a change of circumstances that necessitated a modification of custody. Accordingly, *we find that an intrastate move is not per se a material change of circumstances such that we may presume that it will materially affect the children's welfare without further evidence.* See *Smith v. Smith*, 615 So.2d 926 (La.App. 1st Cir.), *writ denied*, 617 So.2d 916 (La.1993). Therefore, we find that Michael's claims before the trial court were purely speculative and the issue of a modification of child custody was not ripe for adjudication before the tribunal.

*Id.* at 53. (Emphasis added).

Much as the trial court in *Hensgens*, the lower court decision here anticipates difficulties that may arise from Pacen's move to Pollock. At trial neither party testified as to any problems that occurred due to Pacen's impending move. Further, the fact that the greater distance between Pollock and Sulphur will impact Garrett's time with Pacen is not sufficient by itself to constitute a material change in circumstances. Similarly, we held in *Hensgens*, 653 So.2d at 56-57 (footnotes omitted):

Although the move of the boys to Baton Rouge will mean that Michael may have less contact with his sons, this factor alone does not necessitate a finding that custody should be moved from Patricia to Michael.

It is unavoidable that Pacen's relationship with one of his parents will be affected by this custody determination. When there are two loving, concerned and involved parents, as there are in this matter, decisions regarding the custody of the children are extremely difficult, and even more so when the relocation of one of the parents is at issue. However, in today's society, this is one of the many inevitable and undesirable effects of divorce when children are involved. Nichole testified she agreed to move to Pollock only when it became unavoidable. She further testified she would do everything possible to insure that Garrett spent as much time as possible

with Pacen even with the move to Pollock. Nichole has continually demonstrated a sincere effort to maintain Garrett and Pacen's relationship since the divorce. The trial court specifically noted that "[d]espite their stipulated judgments, Nichole has continually offered and agreed to Garrett having additional time with Pacen." Therefore, as the move to Pollock is not, by law, considered a relocation, and no actual negative effects from the move have occurred, we find the trial court erred in finding the move was a material change in circumstances which affected Pacen's welfare.

The trial court also found that Pacen reaching school age was a change in circumstances "which materially affected Pacen." We disagree. There will always be material changes in circumstances throughout the lifetime of a child. Starting school is always such a change, as is the birth of a sibling, adolescence, etc. However, the ultimate question which must be answered is whether the change in circumstances will negatively impact the welfare of the child. As was aptly stated by Judge Weimer in his concurring opinion in *Shaffer v. Shaffer*, 00-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 360, *writ denied*, 00-2838 (La. 11/13/00), 774 So.2d 151, "[l]ife changes may occur, but if the changes do not have an effect on the welfare of the child, then no change in custody is justified." In that same case, Judge Pro Tem Fontenot, in his dissenting opinion, also noted:

> While visitation may be judicially modified to accommodate the needs of a growing child, I am uncomfortable with a rule that could lead to the review of the domiciliary status at each stage of the child's journey to adulthood. . . I have found no case in which a mere reduction in visitation necessitated by school obligations was considered a material change for purposes of empowering a court to discard a prior custody arrangement in the pursuit of the best interest of the child.

*Id.* at 362-3.

The second circuit in *Payne v. Payne*, 41,049 (La.App. 2 Cir. 5/19/06), 930

-9-

So.2d 1181, *writ denied*, 06-1871 (La. 8/9/06), 935 So.2d 130, reversed the trial court's judgment rejecting the mother's request to move to Mississippi with her five-year-old daughter. In discussing the father's argument that the child had already begun school and it would be injurious to her development to move, the *Payne* court stated:

> The child was only five years old at the time of trial and was completing kindergarten. At this very young age, she was not yet so invested in any school or activity that relocation would cause a detrimental impact on her development.

*Id*. at 1185.

Likewise, the trial court noted in this case Pacen was just beginning preschool, and he did "not have a significant school history yet." Thus, we find the trial court's conclusion that Pacen reaching school age was a material change in circumstance that affected his welfare was legally erroneous.

We also find the trial court erred in concluding Pacen's aggressive behavior was a material change in circumstance. There was no testimony from either parent that this behavior arose because of Pacen's future move to Pollock, or because of any difficulties in the shared custody arrangement with his parents. Nichole opined that it may have been the result of learned behavior from watching adults with tempers, specifically Garrett and his mother (Pacen's paternal grandmother). Garrett noted that it was not uncommon for Pacen to exhibit some aggressive behavior, and stated he believed it was Pacen's instinct to hit when he felt he was being picked on. Thus, by the parent's own testimony, Pacen's aggressive behavior was not caused by any possible move to Pollock and the trial court erred in finding it was a material change in circumstances so as to affect the disposition of custody.

**DECREE**

For the above reasons, we find the trial court erred in finding Garrett met his burden of proving there were material changes of circumstances affecting the welfare of the child since the original custody decree was entered. Therefore, the trial court erred by undertaking a best-interest analysis and in modifying the original custody decree. The judgment of the trial court is reversed and the motion for change of custody filed by Garrett Leblanc is dismissed. Costs of this appeal are assessed to Garrett Leblanc.

**REVERSED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1052

GARRETT LINN LEBLANC

VERSUS

NICHOLE LEBLANC

**GENOVESE, J., dissents and assigns the following written reasons**.

I disagree with the majority opinion in this matter and respectfully dissent therefrom. This court has clearly stated the standard of review for an appellate court in child custody cases. "The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365.

The trial court in this case gave extensive and cogent reasons for judgment. Though the majority opinion is a permissive view of the case, the trial court is in the best position to make the call, and we should not err by superimposing our judgment for its judgment. The majority relies heavily on *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478. However, in *Hensgens*, the trial court was addressing an "anticipated move"; whereas in the instant case, the mother had actually relocated and moved the weekend prior to the trial of this matter. The facts in both cases are clearly distinguishable.

There is nothing in the record of this case to show a "clear abuse of discretion" by the trial court or that the trial court was clearly wrong. For these reasons, I dissent from the majority and would affirm the trial court judgment.