LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.
LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.
I respectfully concur in part and dissent in part from the majority opinion. I concur in the majority's affirmation of the district court's award of sole custody to Mr. England and supervised visitation to Ms. England. I write separately as to that affirmation, however, to provide reasons why the burden of proof set forth in Bergeron v. Bergeron[1] was improperly applied to an emergency temporary allocation of custody time under La. C.C.P. art 3945.
I dissent from the majority's amendment and affirmation as amended of the portion of the district court's judgment ordering Ms. England to seek counseling from a specific therapist. I would reverse that portion of the district court's judgment because there is no authority in Louisiana law for a judge to order a litigant to seek counseling in a proceeding under La. C.C.P. art. 3945.
First, the district court's judgment in this case improperly applies the burden of proof set forth in Bergeron to Mr. England's Article 3945 petition. Although neither party expressly challenges the application of Bergeron, Rule 1-3 of the *1072 Uniform Rules of the Courts of Appeal states that the Courts of Appeal will review issues other than those specified in assignments of error when "the interest of justice" clearly requires such review. The interests of justice require that child custody matters are decided by application of the proper burden of proof. This improper application is problematic to future custody proceedings in this case and requires a clarification at this time. I therefore choose to address this error.
Bergeron requires that when a party seeks a modification of a custody arrangement established by a considered decree, the proponent of the change must prove that a change of circumstances materially affecting the welfare of the child has occurred since the prior custody order, and:
The party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child.
492 So.2d 1193, 1200 (La. 1986) ; see also Gray v. Gray , 2011-548, pp. 19-20 (La. 7/1/11), 65 So.3d 1247, 1258-59.
Louisiana Code of Civil Procedure article 3945 provides, in relevant part:
* * *
B. An ex parte order of temporary custody of a minor child shall not be granted unless:
(1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
(2) The applicant's attorney certifies to the court, in writing, either:
(a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.
(b) The reasons supporting his claim that notice should not be required.
C. An ex parte order of temporary custody shall:
(1) Expire by operation of law within thirty days of signing of the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding fifteen days.
(2) Provide specific provisions for temporary visitation by the adverse party of not less than forty-eight hours during any fifteen-day period, unless the verified petition or supporting affidavit clearly demonstrates that immediate and irreparable injury will result to the child as a result of such visitation.
(3) Be endorsed with the date on which the ex parte order is signed and the date and hour of the rule to show cause.
D. The rule to show cause why the respondent should not be awarded the custody, joint custody, or visitation of the child shall be assigned for hearing not more than thirty days after signing of the ex parte order of temporary custody.
* * *
F. In the event an ex parte order of temporary custody is denied, the court shall specifically allocate between the parents the time which the child shall spend with each parent at the hearing on the rule to show cause set pursuant to Paragraph D of this Article, unless immediate and irreparable injury will result to the child....
*1073 Article 3945 thus provides for injunctive relief, first through an ex parte order, and then through a determination of custody at a hearing no more than thirty days after the signing or the denial of the ex parte order. At the thirty-day hearing, the district court "shall specifically allocate between the parents the time which the child shall spend with each parent unless immediate and irreparable injury will result to the child."
Article 3945 allows a district court to award sole custody at the thirty-day hearing where it finds that "immediate and irreparable injury will result...." This burden of proof, like the burdens established by other Louisiana statutes addressing emergency changes of custody,[2] differs from the burden of proof required by Bergeron . Moreover, the record indicates that the district court intended the custody judgment it rendered to be temporary. The judgment itself states Mr. England "is awarded temporary sole custody of the minor children."
Given the temporary nature of emergencies, it is problematic to apply a burden of proof meant to prevent frequent changes in a child's living situation. In Bergeron, the Louisiana Supreme Court concedes that the Bergeron standard may "inflexibly" prevent modifications of custody, but finds that such a "heavy burden of proof in custody modification cases is justified" due to the harm caused to children when "liberal custody modification rules" are applied. 492 So.2d 1193 at 1199 (citations omitted). The Court goes on to state:
The child has at stake an interest of transcending value in a custody modification suit-his best interest and welfare-which may be irreparably damaged not only by a mistaken change in custody but also by the effects of an attempted or threatened change of custody on grounds that are less than imperative. The consequences to the mental and emotional well-being and future development of the child from an erroneous judgment, unjustified litigation, threat of litigation, or continued interparental conflict are usually more serious than similar consequences in an ordinary civil case.
Id. at 1200. The Court's language makes its intent evident-the Bergeron standard exists to prevent frequent custody changes because frequent custody changes are harmful to children.
This rationale loses its sagacity when applied to emergencies under La. C.C.P. art. 3945. The problem Bergeron seeks to prevent, frequent changes in custody, is only amplified when a litigant must prove Bergeron in an emergency situation. Because a Bergeron determination results in a new considered custody decree, such reasoning would subject a child to two custody trials for one emergency-one to obtain a necessary temporary allocation of custody time during the pendency of the emergency situation, and another to return to the prior custody arrangement after the *1074 emergency has abated.[3] To hold that the Bergeron standard applies to emergency custody changes under La. C.C.P. art. 3945 is to undo the rationale of Bergeron itself. Consequently, the district court erred as a matter of law in applying Bergeron to the Article 3945 petition.
Despite the district court's erroneous application of Bergeron , the emergency division of custody time rendered by the district court is proper and in the best interest of the children. The record makes clear that immediate and irreparable injury would result to the children if joint custody were continued, especially considering the testimony of Dr. Luscher and the emotional trauma experienced by the children when they viewed Mr. England's video during the Watermeier hearing. Accordingly, under La. C.C.P. art. 3945, the district court did not err in temporarily allocating time equivalent to sole custody to Mr. England.
Next, the district court improperly ordered Ms. England to seek mental health treatment. The majority states that Ms. England only challenges the portion of the judgment specifying a treatment provider, and not the provision requiring her to seek treatment itself. However, Ms. England states that the order requiring her to receive mental health treatment "is an attempt to regulate the behavior of the parties," "substitutes resolution of the parents' problems for the children's best interest," and "is prohibited." Moreover, Ms. England argues that the district court's judgment violates her constitutional right of free association-an argument that would be nonsensical if, as the majority states, Ms. England only objects to being ordered to associate with this particular mental health counselor. Therefore, the issue of whether the district court had the authority to order Ms. England to receive mental health treatment is properly before this Court.
The majority broadly states that "the court has the authority and discretion to order counseling in custody matters." This assertion is inaccurate. There is statutorily created authority for a district court under specific circumstances to mandate treatment. Under La. R.S. 9:364 (C), a district court shall mandate that a parent found to have a history of perpetrating family violence must participate in a domestic abuse program in order to be allowed supervised visitation, and mandate completion of that program in order for that parent to be allowed unsupervised visitation. Under part D of the same statute, a parent found to have sexually abused their child shall be prohibited from visitation until the parent has completed a treatment program for sexual abusers. Likewise, under La. R.S. 9:331.1, a party to a custody or visitation proceeding may be required to submit to drug testing. No such statutory authority exists, however, to require mental health counseling under La. C.C.P. art. 3945.
In contrast, the statutes the majority uses as "example[s]" of the district court's "authority and discretion to order counseling in custody matters" do not actually allow a district court to order treatment. Louisiana Revised Statute 9:331 allows a district court to order an "evaluation" of a party or a child in a custody or visitation proceeding.[4]
*1075 Louisiana Revised Statutes 9:361 et seq., (the Post-Separation Family Violence Relief Act) as explained supra in reference to La. R.S. 9:364 (C), only allow for mandated mental health treatment under specific circumstances not at issue in the case sub judice.[5] Likewise, La. Ch.C. art. 308 only provides authority for a court to refer charges that a child's physical or mental health or welfare is in danger to the Department of Children and Family Services, not to mandate counseling.[6]
In the absence of statutory authority to do so, I would not interpret the district court's authority so broadly. Rather, I find that the district court lacks the "authority and discretion" to order mental health counseling when rendering judgment on proceedings under La. C.C.P. art. 3945.[7]
*1076 Accordingly, I would reverse that portion of the district court's judgment.
For these reasons, I respectfully concur in part and dissent in part from the majority opinion.[8]

492 So.2d 1193 (La. 1986).

Immediate temporary change of custody statutes require different showings than the burden of proof stated in Bergeron depending upon the nature of the emergency they were created to address. See La. R.S. 46:2131 et seq. (providing for an award of temporary custody where there is an immediate danger of abuse); La. R.S. 9:364 (specifying how a district court should award custody upon a showing that a parent has a history of perpetrating family violence); La. Ch.C. art. 1570 (allowing a juvenile court to award temporary custody "to bring about a cessation of abuse of a party"). Compare La. C.C.P. art. 3945 (G) (stating, "[t]he provisions of this Article do not apply to any order of custody of a child requested in a verified petition alleging the applicability of the Domestic Abuse Assistance Act, R.S. 46:2131 et seq., Children's Code Article 1564 et seq., or the Post-Separation Family Violence Relief Act, R.S. 9:361 et seq.").

For an alternative to this result, see infra fn. 8.

La. R.S. 9:331 states:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.

The record in the case sub judice indicates that Ms. England filed a Motion to Determine History of Family Violence, which was denied. Mr. England never pursued relief under La. R.S. 9:364, and the district court did not invoke the provisions of the Post-Separation Family Violence Act sua sponte.

La. Ch.C. art. 308 states:
A. Whenever any court of this state in the trial of any proceeding has cause to believe that a child's physical or mental health or welfare is endangered by abuse or neglect, it may report and refer the charges to the local child protection unit of the Department of Children and Family Services in accordance with Article 610.
B. If from its investigation the department determines that the report is validated or if it has obtained an instanter order from the juvenile court, it shall file appropriate written notice in the civil proceeding in which the complaint arose. Thereafter, the juvenile court shall have jurisdiction to resolve the case as a child in need of care proceeding pursuant to the provisions of Title VI.
While the district court did not have the authority to mandate mental health counseling under La. C.C.P. art. 3945, the district court had the discretion to order a Mental Health evaluation pursuant to La. R.S. 9:331. The district court also had the discretion to report and refer these matters to the Department of Children and Family Services under La. Ch. C. art. 308 if the district court's decision to mandate mental health counseling for Mother and the children was due to a belief that the children's mental health was endangered by abuse or neglect. If the Department determines that the report is valid or obtains an instanter order from the juvenile court, then the juvenile court can exercise its authority to order mental health counseling for the family under proper monitoring and reporting as set forth in the Louisiana Children's Code. The parties could also agree to mental health treatment.

In support of her claim, Ms. England relies on Griffith v. Latiolais , 2010-0754 (La. 10/19/10), 48 So.3d 1058, 1071-72, which upheld the Third Circuit's reversal of the portion of a judgment requiring that the parents continue counseling sessions with a parenting coordinator and that they follow the parenting coordinator's recommendations. Id. at 2010-0754, p. 19, 48 So.3d at 1071. The Griffith court stated when so holding that "[t]here is no provision in the law that allows the trial court to require continued counseling outside the parameters of La. R.S. 9:358.1." Id. Ms. England relies on this statement for her assertion that the district court had no authority to require that she seek individual counseling with a specific therapist. A reading of the Griffith opinion in its entirety, however, makes it apparent that the Griffith court was referencing the lack of a provision allowing a district court to require continuing counseling from a parenting coordinator outside the parameters of La. R.S. 9:358.1. The Griffith court did not opine on the district court's requirement that those parents seek individual counseling with specific therapists. However, my finding that the district court exceeded its authority to mandate treatment with a specific mental healthcare provider is consistent with Griffith's interpretation of La. R.S. 9:358.1.

If the reasons provided by the partial concurrence and partial dissent were properly applied by the district court, "all of Ms. England's visitation sessions" would continue to be "supervised until...she is given written authority by the Court," as stated in the March 30, 2017 judgment (excluding the portions ordering that Ms. England subject herself to mental health counseling). Then, emergency temporary allocation of custody time under La. C.C.P. art 3945 would be lifted, and the original March 31, 2016 custody decree would be reinstated.