JAMES F. MCKAY III, CHIEF JUDGE
_JjThis appeal stems from a contentious custody dispute. Jonathan Mathes (Mr. Mathes) seeks review of two judgments rendered on January 30, 2017, setting forth custody and denying his Exception of No Cause of Action. For the reasons set forth below, we affirm both judgments.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The child, N.M.[1], was born on September 6, 2012. The parents, Mr. Mathes and Gia Faucheux (Ms. Faucheux), were never married.
Mr. Mathes ánd Ms. Faucheux began a long distance relationship in 2010 while Mr. Mathes resided in Algiers (a subdivision of New Orleans), Louisiana, and Ms. Faucheux resided in Houston, Texas. After becoming pregnant, Ms. Faucheux lived with Mr. Mathes in New Orleans for a short time, moving back to Houston when she was four months pregnant. N.M. was born in Houston. Shortly thereafter, Ms. Faucheux and N.M. moved to New Orleans to 'reside with Mr. LMathes. Following a rocky relationship, Ms. Faucheux and N.M. moved back to Houston on January 1,2014.
On January 7, 2014, Mr. Mathes filed a Petition for Joint Legal Custody, seeking domiciliary status. On January 14, 2014, Mr. Mathes filed a motion objecting to Ms. Faucheux’s unauthorized relocation of the minor child pursuant to Louisiana’s relocation statute, La. R.S. 9:355.1 et seq.[2] Ms. Faucheux filed an Answer and Reconven-tional Demand, seeking sole custody of N.M.
A hearing was held on April 2, 2014. The parties entered into a Consent Judgment, signed by the court on May 1, 2014, recognizing Mr. Mathes as the biological father of N.M. and designating Louisiana as the child’s home state. An Interim Consent Judgment was also rendered,on May 1, 2014, wherein the parties agreed to participate in a custody evaluation with court appointed expert, Martha Bujanda (Ms. *506 Bujanda). The Interim Consent Judgment further set forth an “interim” physical custody schedule “without prejudice.” Pursuant to this schedule, the parties would share a one week on/one week off arrangement, with the exchange of N.M. taking place on Sundays in Lafayette, Louisiana.
On July 14, 2014, Ms. Bujanda issued her first report. Based on her evaluation of Ms. Faucheux, Mr. Mathes, and N.M., she recommended that the parties keep the same one week on/one week off schedule. She further recommended that Louisiana should be the child’s primary residence.
|3On March 16, 2015, the trial court ordered Ms. Bujanda to update her evaluation. After conducting a re-evaluation, a second report was issued on May 25, 2015, wherein her recommendations for shared custody remained unchanged. Ms. Bujanda again recommended that the child’s primary residence remain in Louisiana.
In a judgment dated June 16, 2015, the trial court ordered that Ms. Bujanda’s recommendations be implemented on an interim basis. In accordance with that ruling, N.M. moved back to Louisiana to take up his primary residence with Mr. Mathes. The judgment further ordered that the parties participate in a custody evaluation with Dr. Erin L. Skaff Vandenweghe (Dr. Vandenweghe).
Dr. Vandenweghe conducted an evaluation of the parties and rendered a report in December 2015, wherein she recommended that Ms, Faucheux be designated as the primary custodian with as much visitation to Mr. Mathes as possible. Dr. Vandenweghe further stated that if the parents were to live in the same city, she would recommend equal physical custody.[3]
On January 19, 2017, Mr. Mathes filed an Exception of No Cause of Action, asserting that Ms. Faucheux’s Reconventional Demand failed to make any request to relocate the minor child’s residence. Mr. Mathes asserts that Ms. Faucheux failed to provide notice of the request for relocation, and therefore failed to abide by the relocation statute. Mr. Mathes also filed a Motion in Limine seeking to prohibit testimony by Dr. Vandenweghe, and to exclude her report because it Lmakes recommendations regarding the relocation of the child to Houston, which Ms. Faucheux failed to properly plead. Both motions were deferred to the day of trial.
Pursuant to Mr. Mathes’ Motion to Determine Final Custody, trial was held on January 25, 26 and 27, 2017.[4] The trial court heard testimony from Ms. Faucheux, Mr. Mathes, court appointed evaluators Ms. Bujanda and Dr. Vandenweghe, along with Dr. Kristen Luscher (Dr. Luscher), a witness called by Mr. Mathes.
Ms. Bujanda and Dr. Vandenweghe testified as to their findings based on their court ordered evaluations. Dr. Luscher never evaluated the parties. Rather, Mr. Mathes called Dr. Luscher as an expert in clinical psychology to critique the evaluations of the court appointed experts. Dr. Luscher opined that some of the tests used by Dr. Vandenweghe were not applicable to child custody evaluations. Dr. Luscher could not say whether she agreed with the opinions of Ms. Bujanda and Dr. Vande-nweghe because she never met with the parties or the child. Moreover, she did not *507 provide a recommendation of her own concerning the custody of N.M.
Judgment was rendered on January 30, 2017, denying Mr. Mathes’ Exception of No Cause of Action and his Motion in Limine.[5] A separate judgment was rendered on that date, granting joint custody to the parties and designating Ms. |,-.Faucheux as the domiciliary parent with liberal and reasonable visitation to Mr. Mathes. The judgment sets forth a very detailed schedule for school year, summer, and holiday visitation with the child.
Mr. Mathes appealed both of the January 30, 2017 judgments. On appeal, Mr. Mathes asserts six assignments, some of which are duplicative.
Assignments of error one and two assert that the trial court erred in denying the Exception of No Cause of Action regarding relocation and in making a relocation determination not properly before the court. Assignments of error three, five, and six assert that the trial court erred in making its custody determination without a finding of a change in circumstances and without considering the best interest factors under the relocation statute. In assignment of error four, Mr. Mathes avers that the trial court erred in admitting highly prejudicial text messages, which he sent to Ms. Faucheux before N.M. was born.
LAW AND ANALYSIS

Standard of Review

Child custody determinations are reviewed under the abuse of discretion standard. State through Dep’t of Children & Family Servs. Child Support Enforcement, 2016-0979, p. 12 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 139 (citing Leard v. Schenker, 2006-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357). Likewise, in a relocation case, the trial court’s determination “will not be overturned absent a clear showing of abuse of discretion.” Curole v. Curole, 2002-1891, p. 4 (La. 10/15/02), 828 So.2d 1094, 1096. “In reviewing the record to determine whether the trial court’s ultimate conclusion constitutes an abuse of Indiscretion, an appellate court must accept each factual finding the trial court made in arriving at that conclusion, unless the particular factual finding is manifestly erroneous.” LaGraize v. Filson, 2014-1353, p. 15 (La. App. 4 Cir. 6/3/15), 171 So.3d 1047, 1054.

Assignments of Error One and Two: Exception of No Cause of Action/Relocation

Mr. Mathes filed an Exception of No Cause of Action, wherein he asserted that Ms. Faucheux’s Reconventional Demand failed to make a request to relocate the minor child. For that reason, Mr. Mathes has asserted that the issue of relocation was not properly before the court. The exception was denied.
The Louisiana Supreme Court has summarized the law regarding the peremptory exception of no cause, of action as follows:
A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant. Ramey v. DeCaire, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118; Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La. 1993). The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. Ramey v. DeCaire, p. 7, 869 So.2d at 118. No evidence may be introduced to support or *508 controvert an exception of no cause of action. La. Code Civ. Proc. - art. 931. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. Ramey v. DeCaire, p. 7, 869 So.2d at 118; Jackson v. State ex rel. Dept. of Corrections, 00-2882, p. 3 (La. 5/16/01), 785 So.2d 803, 806; Everything on Wheels Subaru, 616 So.2d at 1235. The issue at the trial of the exception is whether, on the face of the petition,: the plaintiff is legally entitled to the relief sought. Ramey v. DeCaire, p. 6, 869 So.2d at 118; Montalvo v. Sondes, 93-2813 (La. 5/23/94), 637 So.2d 127, 131.
State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C., 2010-2264, pp. 8-9 (La. 5/10/11), 63 So.3d 940, 945-46.
|7Ms. Faucheux’s Reconventional Demand seeks custody of N.M., for which the law clearly provides a remedy. As applied to the facts of this case, an exception of no cause of action is not the proper procedural vehicle to raise the' failure- of Ms. Faucheux to make a request for relocation, or- to question whether the relocation issue was properly before the court. Thus, we find no error in the denial of-the exception. Nonetheless, the question of Whether the trial court erred in ruling on the merits of the relocation issue will be discussed more fully below.

Assignments of Error Three, Five and Six: Custody/Best interest of the Child:

Mr. Mathes maintains that this is a relocation case, and that the trial court erred in not applying the relocation statute in determining custody of N.M. Ms. Fau-cheux counters, asserting that the relocation statute does not apply here because this is a simple custody dispute between a Texas domiciliary and a Louisiana domiciliary. - .
It is evident from the record that the trial court agreed with Ms. Faucheux’s argument and applied the best, interest of the child factors listed in La. C.C. art. 134, rather than the factors enumerated in the relocation statute,. La. R.S. 9:355.1, et seq. For the reasons set forth below, we find that the trial court erred in not applying the relocation statute ,in making its custody determination.
La. R.'S. 9:355.1 provides the following definitions:
As used in this Subpart:
(1) “Principal residence of a child” means:
(a) The location designated by a court to be the primary residence of the child.
(b) In the absence of a court order, the location at which" the parties have expressly agreed that the child will primarily reside.
I «(c) In the absence of a court order or an express agreement, the location, if any, at which the child has spent the majority of time during the prior six months.
(2) “Relocation” means, a change in the principal residence of a child for a period of sixty days or more, but does not include a temporary .absence from the principal residence.
Based on the evidence presented, and considering the above referenced statutory definitions, New Orleans, Louisiana was N.M.’s primary residence. A couple of months after N.M. was born in Houston on September 6, 2012, Ms. Faucheux and N.M. moved to New Orleans to live with Mr. Mathes in his home. When Ms. Fau-cheux and N.M. moved back to Houston on January 1, 2014, N.M. had resided in New Orleans most of his young life. Thus, as defined in La. R.S. 9:355.1(l)(c), New Orleans would have been his primary residence at the time. Also, as represented in *509 the parties’ April 2014 consent agreement, Louisiana was designated as N.M.’s home state. Clearly, in moving N.M. to Houston, there was a “relocation” of the child’s primary residence outside of the state. For these reasons, we must conclude that the trial court erred in not considering the factors listed in the relocation statute.
La. R.S. 9:355.14 provides:
A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following: (emphasis added).
(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody | sor visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s views about the proposed relocation, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
(6)How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity, (7) The reasons of each person for seeking or opposing the relocation. (8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.
(10) The feasibility of a relocation by the objecting person.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.[6]
B. The court may not consider whether the person seeking relocation of the child may relocate without the child if relocation is denied or whether the person opposing relocation may also relocate if relocation is allowed.
La. R.S. 9:355.14 “mandates that all of the factors be considered by the court.” Curole v. Curole, 2002-1891, p. 6, 828 So.2d at 1097. Here, it is evident from the record that the trial judge chose not to consider the relocation factors. That determination was legal error. However, the jurisprudence demonstrates that the failure to consider the relocation factors does *510 not necessarily mandate a reversal on that ground alone,
_JjjjIt is well established that “the trial court is not required to expressly analyze each statutory relocation factor in its oral or written reasons for judgment in a relocation case.” Gathen v. Gathen, 2010-2312, p. 12 (La. 5/10/11), 66 So.3d 1, 9. “The trial court’s failure to expressly analyze each factor does not constitute an error of law that would allow de novo review.” Id. However, in H.S.C. v. C.E.C., 2005-1490, p. 9 (La. App. 4 Cir. 11/8/06), 944 So.2d 738, 743, this Court held that where the record does not support a finding that the trial court actually considered each relocation factor, de novo review, rather than reversal, was the appropriate remedy. In Smith v. Smith, 44,663, p. 18 (La. App. 2 Cir. 8/19/09), 16 So.3d 643, 654, the Second Circuit determined that the trial court committed legal error when it evaluated the case based on the best interest of the child factors set forth in La. C.C. 134, rather than the relocation factors. Accordingly, a de novo review of the appropriate factors was conducted. The Fifth Circuit has also held that where the record does not support a finding that the trial court actually considered each factor, prejudicial legal error has occurred; and the court of appeal may remedy the deficiency by de novo review of the record. Johnson v. Spurlock, 2007-949, p. 7 (La. App. 5 Cir. 5/27/08), 986 So.2d 724, 728; See also, Bailey v. Bailey, 2016-0212, p. 6 (La. App. 1 Cir. 6/3/16), 196 So.3d 96, 100. In accordance with these precepts, we now conduct a de novo review of the record to determine whether relocation was appropriate in this case.
“The person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child.” La. R.S. 9:355.10. “If an objection to the relocation is made in accordance with R.S. 9:355.7, the person wishing to relocate must prove by a preponderance of the evidence, on contradictory hearing, that relocation meets the good faith and best [^interest standards.” State ex rel. Dep’t of Soc. Servs. v. Whittington, 2015-1118, p. 4 (La. App. 4 Cir. 5/18/16), 193 So.3d 1234, 1238 (citing La. R.S. 9:355.10, comment a).

Good Faith

Regarding “good faith,” this Court has explained:
While the relocation statute requires a good faith finding, it does not define the term. However, “jurisprudence has defined the meaning of the term good faith in this context as a legitimate or valid reason for the move.” McLain v, McLain, 2007-0752, p. 13-14 (La. App. 4 Cir. 12/12/07); 974 So.2d 726, 734. In contrast, “[r]elocations that are based on a frivolous reason, no reason, or just to interfere with the noncustodial parent’s visitation with the children do not satisfy the good faith requirement.” Id. (internal quotations and citations omitted). Legitimate reasons for relocation include: to be close to significant family or other support networks; for significant health reasons; to protect the safety of the child or another member of the child’s household from a significant risk of harm; to pursue a significant employment or educational opportunity; or to be with one’s spouse (or equivalent) who is established, or is pursuing a significant employment or educational opportunity in another location. Id.
Whittington, 2015-1118, p. 6, 193 So.3d at 1239.
In the instant case, Ms. Faucheux testified that Mr. Mathes had a history of verbal abuse toward her throughout their relationship. She stated that she moved-with N.M. on January 1, 2014, because Mr. Mathes told her to get her stuff and get *511 the “F” out of his house by January 1, 2014 or he would put her things on the street. Mr. Mathes did not deny that he told Ms. Faucheux to get out by January 1, 2014. Rather, he explained that he made the statement after an argument and immediately took it back. He also stated that Ms. Faucheux repeatedly told him she wanted to move out. Ms. Fáucheux testified that she had no other place to stay in the New Orleans area, so she went to Houston where she had a pláce to stay and close family support. There is no evidence from the testimony that Ms. Faucheux’s motivation for moving to Houston was frivolous or that the move was |12an attempt to limit Mr. Mathes’ access to the child. Further, the record is void of any evidence to challenge Ms. Faucheux’s good faith motives in relocating to Houston. The record supports the conclusion that the relocation was made in good faith.

Best Interest of the Child Factors, La. R.S. 9:355.14

(1)The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child’s life. ■

The consensus among the court appointed evaluators, Ms. Bujanda and Dr. Vandenweghe, was that both parties were good and loving parents and that N.M. was well adjusted. Grandparents on both sides assisted in caring for N.M. on occasion.
Based on her evaluation, Dr. Vande-nweghe considered Ms. Faucheux.a more organized and stable parent. She further stated that Ms. Faucheux showed good judgment and demonstrated the ability to make decisions on N.M.’s behalf. Dr. Vandenweghe opined that it was in N.M.’s best interest to reside with Ms. Faucheux in Houston, with liberal visitation to Mr. Mafhes.
Ms. Bujanda considered the parents to be equally good parents. However, she thought that N.M. should remain in Louisiana. In her opinion, the-move to Houston was disruptive.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational and emotional development.

At the time of the -trial court proceedings, N.M. was just over four years old. The evidence indicates that N.M. had equally good educational opportunities available in both states.
11sMs. Faucheux along with Ms. Bujanda and Dr. Vandenweghe were concerned with the fact that Mr. Mathes continued to smoke cigarettes in spite of the fact that N.M. has respiratory problems. Mr. Mathes testified that he smokes on a daily basis, although not inside the home. Ms. Faucheux testified that Mr. Mathes did not keep an inhaler at his home for N.M. Ms. Bujanda cautioned him to stop smoking in light of N.M.’s respiratory problems.
Ms. Faucheux testified that when she moved to New Orleans with N.M. just after his birth, Mr. Mathes had a snake and two alligators in his home. She also stated that Mr. Mathes’ friend, Kenny, was living in the home at the time and that Kenny sometimes had women spend the night in the home. Both evaluators agreed that it was not in the child’s best interest to have the reptiles, or the roommate in the home. Mr. Mathes eventually removed the reptiles and asked Kenny to move out.
(3) The .feasibility. of preserving a good relationship between the. non-relocating person and the child through suitable physical custody - or visitation arrangements, considering the logistics and financial circumstances of the parties.
The.parties demonstrated a willingness to facilitate travel arrangements and lib *512 eral visitation with N.M. This is evidenced by the consent agreement, wherein the parties shared a one week on/one week off arrangement, with the exchange of N.M. taking place in Lafayette, Louisiana.
Dr. Vandenweghe testified that in addressing the access to the child issue, she determined that because Ms. Faucheux made efforts to travel, is able to afford travel, and is able to get the child back and forth, it is in the best interest of the child to live with his mother.
1 u(tí The child’s views about the proposed relocation, taking into consideration the age and maturity of the child.
There is no record evidence of the child’s views on relocation.

(5) Whether there is an established pattern of conduct by .either the person seeking or the person opposing the-relocation, either to promote or thwart the relationship of the • child and the other ■ party.

Generally, the parties have demonstrated a willingness to promote visitation with the other parent. There is no evidence that either party has acted in any way to thwart the relationship of the child with the other parent.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

Both parents have the ability to financially provide for N.M. Both parents have equally nice homes. There are family members on both sides that play a role in N.M.’s life.-As previously stated, the educational opportunities appear to be comparable. Ms. Faucheux testified that she brings N.M. to church services. Mr. Mathes does not attend church, but enrolled N.M. in a Catholic school in New Orleans. ■

(7) The reasons of each person for seeking or opposing the relocation.

As previously stated, the record provides a basis for finding that Ms. Fau-cheux’s relocation was made in good faith. Mr. Mathes’ opposition to the relocation also appears to be well-intended. There is no dispute that Mr. Mathes loves N.M. and wants to maintain a close relationship with his son,

(8) The current employment and■ economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

Ms. Faucheux testified that while she was living in New Orleans, she was working at a job' making approximately $50,000.00. She started a new job in Houston, with NextEra -Energy making $58,000.00, plus bonuses, better insurance, |1fiand a chance for advancement. Ms. Fau-cheux also testified that she is taking classes to expand her career opportunities.
At the time Ms. Faucheux moved to New Orleans with N.M., Mr. Mathes was not .working. At trial, Mr., Mathes testified that he was self-employed in the construction business. ,

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

Both parents have provided for N.M. financially. There are no child support disputes here.

(10) The feasibility of a relocation by the objecting person.

Mr. Mathes owns a home-in New Orleans, near his parents. He is self-employed. His relocation to Houston, where he has no family or employment connections, does not appear to be feasible.

*513
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduat and the failure or success of any attempts at rehabilitation.

There is no evidence of any. physical violence between the parties. However, Ms. Faucheux testified that Mr. Mathes often subjected her to verbal abuse, which continued after she moved back to New Orleans with N.M. Mr. Mathes did not deny the accusations.
At trial, Ms. Faucheux introduced text messages, which Mr. Mathes sent to her prior to N.M.’s birth. As discussed more fully below in assignment of error four, we find no error in the introduction of the text messages. There is no doubt that the language used in the text messages was egregious and vulgar. Mr. Mathes admitted sending the inappropriate text messages. Ms. Bujanda and Dr. Vandenweghe both agreed that the language used in the text messages was abusive l^and demeaning. Dr. Vandenweghe also testified that Mr. Mathes used foul language during the evaluation.
Drug use is not an issue. Ms. Faucheux testified that she was concerned that Mr. Mathes had a drinking problem. Mr. Mathes denied having a drinking problem. He did state that in the past he had been arrested for DWI and for a weapons charge, both of which were dismissed.
At trial, Mr. Máthes was questioned about numerous charges on his credit card made on a regular basis at a neighborhood bar near his home, as well as other local bars. He admitted that he frequented the neighborhood bar and confirmed the credit card charges. He stated, however, that the visits to the bar and -the charges were often work related, explaining that he met with members of his construction crew to plan out upcoming projects. The credit card receipts revealed that, on some occasions, Mr. Mathes made charges at the bar three or four nights in a row. He testified that he was in the bar on the night before trial while N.M. was with his parents. Ms. Bujanda testified that the number' of nights spent in bars as testified to by Mr. Mathes would raise questions, or “trigger an alert” regarding his drinking.

(12) Any other factors affecting the best interest of the child.

In light of our review of the first eleven factors, we do not find any -other factors affecting N.M.’s 'best interest that we need to consider here. -
Based on our de novo analysis of the ¡above twelve factors set forth in La. R,S. 9:355.14, we find no factors that would prevent relocation. After weighing the factors as a whole, we find that they weigh heavily in favor of allowing the relocation. Furthermore, we find that Ms. Faucheux met her burden of proving that the relocation is in the best interest of the child. Accordingly, we find no error 117in the trial court’s ruling, granting joint custody and designating Ms. Faucheux as the domiciliary parent with liberal visitation to Mr. Mathes.-

Assignment of Etror Four: Introduction of Text Messages

Mr. Mathes asserts that the trial' court erred in admitting highly prejudicial text messages, which he sent to Ms, Faucheux. Mr. Mathes admitted to sending the text messages, which contained derogatory, demeaning, and racially inappropriate statements toward Ms. Faucheux. However, he argues that because the text messages were sent before N.M. was born, their probative value is minimal. We disagree.
Ms. Faucheux testified as to Mr. Mathes’ verbally abusive conduct aside from the text messages. She testified that *514 the verbal abuse continued after N.M. was born. Thus, there is confirmation of the verbal abuse aside from the text messages. Moreover, we note that the court ordered evaluators were aware of the contents of the text messages and considered them in formulating their opinions. For these reasons, we find no prejudicial effect with their introduction.
La. C.E. art. 402 provides that “[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation.” Article 402 further provides that evidence that is not relevant is inadmissible. La. C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
It is well established that a trial judge has vast discretion concerning the admissibility of evidence. Richardson v. Richardson, 2007-0430, p. 9 (La. App. 4 Cir. 12/28/07), 974 So.2d 761, 769. The trial judge’s decision to admit or exclude | ^evidence will not be reversed on appeal absent a clear showing that he or she has abused that discretion. Id. (citing Boykins v. Boykins, 2004-0999, p. 4 (La. App. 4 Cir. 4/24/07), 958 So.2d 70, 74).
In this custody case, where the court is called upon to assess the best interests of the child, the content of the text messages is clearly relevant. Furthermore, because evidence of the verbal abuse was corroborated by Ms. Faucheúx’s testimony, and admitted to by Mr. Mathes, we do not find that the introduction of the text messages was prejudicial. Accordingly, we find no abuse of discretion on the part of the trial court in admitting the text messages into evidence.
CONCLUSION
For the foregoing reasons, and after our de novo review of the record, we find that the trial court did not err in its custody determination. Moreover, we find no error in the trial court’s denial of Mr. Mathes’ exception of no cause of action. Accordingly, we affirm both of the judgments rendered on January 30, 2017.
AFFIRMED

. In this opinion, the initials, rather than the full name, of the minor child are used to protect and maintain the privacy of the minor child in these proceedings. See Uniform Rules, Courts of Appeal, Rule 5-1 and 5-2.

. La. R.S. 9:355.4(A) provides that a person proposing relocation of the child’s principal residence shall notify the other parent.

. Ms. Bujanda and Dr. Vandenweghe testified as to their findings; their reports were not accepted into evidence.

. Prior to this hearing to determine custody, numerous interim visitation judgments were rendered to address summer and holiday schedules as they arose. Also during this period, the trial court addressed numerous evi-dentiary and discovery issues raised by the parties.

. The denial of the Motion in Limine is not before us in this appeal.

. La. R.S. 9:355.6 further provides, in pertinent part, that "[t]he court may consider a failure to provide notice of a proposed relocation of a child as: (1) A factor in making its determination regarding the relocation of the child.”