Judge Tiffany G. Chase
Alina Julia England (hereinafter "Ms. England") seeks review of the December 15, 2017 judgment denying her request to return to joint physical custody of her minor children with her ex-husband James England (hereinafter "Mr. England"). The *701 judgment also ordered Ms. England to seek mental health counseling addressing parental alienation from a specific therapist. For the reasons that follow, we vacate the portion of the judgment that orders Ms. England to seek treatment from a specific therapist and remand the matter for an evidentiary hearing within thirty (30) days, of the date of this opinion, to address an increase in unsupervised visitation.
Factual Background and Procedural History
The underlying facts of this case have been before this Court numerous times.[1] Mr. and Ms. England have engaged in highly contentious litigation since the parties divorced in 2015. The contentiousness surrounds the custody of the couple's two minor children.
A brief history of the procedural history of this litigation is relevant to our analysis. On March 31, 2016, the trial court entered a considered decree awarding the parties joint legal and shared physical custody of the minor children. The trial court found it was in the best interest of the children for Mr. England to be designated domiciliary parent. The court favored Mr. England because of his demonstrated willingness to communicate with Ms. England regarding the children. The court further found Ms. England was engaging in behavior which constituted alienating behavior towards Mr. England. Ms. England appealed the judgment to this Court, citing numerous assignments of error, but mainly challenging the trial court's designation of Mr. England as domiciliary parent. On June 28, 2017, this Court affirmed the ruling designating Mr. England as the domiciliary parent, finding the trial court did not abuse its discretion.
On March 13, 2017, Ms. England filed a fourth petition for protection from abuse, alleging that Mr. England abused both children on several occasions.[2] In response, Mr. England filed a petition for emergency temporary custody pursuant to La. C.C.P. art. 3945. Both petitions were heard on March 23, 2017. The trial court dismissed Ms. England's petition for protection from abuse, finding no evidentiary support for the issuance of a protective order. Further, by judgment dated March 30, 2017, the trial court (1) entered an interim award of temporary sole custody to Mr. England; (2) implemented a ninety day no contact order between Ms. England and the children; (3) awarded Ms. England eight hours of weekly supervised visitation; and (4) ordered that the supervised visitation continue until Ms. England completed therapy with Betsey Backe, LCSW (hereinafter "Ms. Backe"). In modifying custody, on an interim basis, the trial court found that Mr. England met his burden of proof that a change of circumstances existed which materially affected the welfare of the children and that modification of custody was justified. The trial court further determined that Ms. England was naïve to the fact that her actions were having a detrimental effect on the development of *702 the children. Ms. England appealed the judgment.
On March 2, 2018, this Court issued an opinion finding, "while the court has the authority and discretion to order counseling in custody matters, we find no authority to support the order of a specific therapist to provide that therapy." England , 238 So.3d at 1071. The March 30, 2017 judgment was affirmed in all other respects.
Meanwhile, on August 2, 2017, believing that she had complied with the trial court's March 30, 2017 judgment, Ms. England filed an expedited rule to remove supervised visitation and to establish joint custody.[3] She requested the trial court vacate, modify or supplement the previous custody judgment as she had satisfied the treatment goals outlined in her mental health counseling. In response to Ms. England's expedited rule on October 27, 2017, Mr. England filed an exception of no cause of action, arguing that she failed to plead a valid cause of action warranting modification of the custody order. Mr. England also filed a motion to exclude the custody opinion testimony of Ms. Backe contending that it should be excluded because she was not designated as a custody evaluator. A hearing on the motions was held on November 13, 2017. The trial court sustained Mr. England's exception of no cause of action and provided Ms. England thirty days to amend her expedited rule. Additionally, the trial court denied Mr. England's motion to exclude custody opinion testimony but reserved his right to object to any custody opinion testimony offered by any expert at trial.
On November 22, 2017, Ms. England filed an amended expedited rule to terminate temporary custody, to remove supervised visitation and return to the permanent custody arrangement, requesting the trial court revert to the March 2016 custody order awarding joint custody. The expedited rule was heard by the trial court on December 1, 2017, and December 6, 2017. The trial court issued judgment on December 15, 2017[4] ordering that (1) Mr. England continue to have sole custody of the minor children; (2) Ms. England eight hours every Sunday from 10:00 a.m. to 6:00 p.m. of unsupervised visitation; (3) Ms. England be allowed to attend extracurricular activities, meets, performances and school programs and that Mr. England share information with her regarding these events; (4) Ms. England communicate with the minor children via telephone, FaceTime or email (with telephone or FaceTime calls conducted between the hours of 7:00 p.m. and 8:00 p.m.); (5) Ms. England seek professional therapy from Daliah Bauer, Ph.D., to address parental alienation, specifically addressing, the previous abuse allegations against Mr. England, her disparaging remarks about Mr. England in the presence of the minor children, the numerous frivolous investigations against Mr. England and her use of the minor children as pawns[5] and (6) a new parenting coordinator be appointed, who shall be contacted if any issues arise between the parties. From this judgment, Ms. England seeks expedited review.
*703 Standard of Review
"Child custody determinations made by the trial court are entitled to great weight and, upon appellate review, that determination will not be disturbed absent a clear showing of abuse of discretion." Hilkirk v. Johnson , 2015-0577, p. 25 (La.App. 4 Cir. 12/23/15), 183 So.3d 731, 746 (citations omitted). The goal of every child custody case is to determine what is in the best interest of the child, with each case viewed based on its own particular facts and circumstances. Id. (citing Mulkey v. Mulkey , 2012-2709, p. 15 (La. 5/7/13), 118 So.3d 357 ). "[T]he Louisiana Supreme Court described the appellate review standard by stating that 'upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse.' " Lannes v. Lannes , 2007-0345, p. 3 (La.App. 4 Cir. 2/13/08), 977 So.2d 1119, 1121 (citing Bergeron v. Bergeron, 492 So.2d 1193, 1196 (La. 1986) ). As such, we review this matter under an abuse of discretion standard of review.
Discussion
Ms. England lists numerous assignments of error on appeal. However, we find the central issue to be two-fold: whether the trial court abused its discretion in denying Ms. England's motion to terminate the interim judgment awarding sole custody to Mr. England; and whether the trial court abused its discretion in ordering her to seek additional therapy with a specific therapist.
Ms. England argues that the trial court erred in relying on previous allegations of parental alienation as a basis for denying the request to terminate the interim judgment. Specifically, she argues that the trial court incorrectly placed significant weight on the theory of parental alienation and recounted events which occurred prior to the March 30, 2017 judgment to determine what is currently in the best interest of the children.
When determining child custody a court shall award custody in accordance with the best interest of the child. La. C.C. art. 131. La. C.C. art. 134 outlines twelve factors used in determining the best interest of the child, which include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
*704 (12) The responsibility for the care and rearing of the child previously exercised by each party.[6]
This Court has previously determined that two of the twelve factors relate to parental alienation, factors six and ten. Palazzolo v. Mire , 2008-0075, p. 46 (La.App. 4 Cir. 1/7/09), 10 So.3d 748, 775. Additionally, "The court is not required to analyze mechanically all of the dozen factors; rather the court should balance and weigh the factors in view of the evidence presented." Id. , 2008-0075,p. 37, 10 So.3d at 769-770. "We recognize that these twelve factors are considered to be illustrative and nonexclusive, and the trial court has discretion to determine the relative amount of weight to give each factor." Hilkirk , 2015-0577, p. 37, 183 So.3d at 752 (citations omitted).
A review of the judgment reveals that the trial court placed significant weight on factor ten. Factor ten is the "the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party." La. C.C. art. 134(10).[7] The trial court found that Ms. England's therapy addressed co-parenting but not parental alienation, which it reasoned was the basis for granting Mr. England temporary sole custody. As such, Ms. England's completion of therapy with Ms. Backe was not enough to terminate the temporary sole custody order. Ms. Backe and Ms. England testified regarding the details of their therapy sessions and the ultimate outcome after completion of therapy. Although, the record before this Court does not support a distinction between co-parenting and parental alienation, it is paramount to look to the testimony of Ms. Backe and Ms. England when analyzing the trial court's reasoning on whether the therapy sufficiently addressed the trial court's parenting concerns regarding Ms. England.
Ms. Backe testified extensively about the particulars of her appointment as Ms. England's therapist. She testified that she was appointed by the trial court as Ms. England's individual therapist, not as a family, or reconciliation, therapist. The trial court subsequently certified her as an expert in social work, co-parenting and family therapy, but not reconciliation therapy. Ms. England maintains the trial court erred in excluding Ms. Backe's opinion testimony regarding who should be awarded custody of the minor children. Although the trial court acknowledged that custody encompasses visitation, Ms. Backe was not allowed to testify about her opinion regarding those issues. The trial court stated that Ms. Backe was appointed to provide individual therapy to Ms. England, as such, her opinion regarding which parent should have custody and the guidelines surrounding visitation was inadmissible.
Ms. England treated with Ms. Backe nine times over a three month period.[8] Ms. Backe stated that Ms. England's treatment goal was to successfully co-parent with Mr. England. She stated that Ms. England successfully met her treatment goal and learned that communication with Mr. England is critical. However, on cross examination, Ms. Backe noted that throughout treatment Ms. England denied that she engaged in any alienating behavior.
*705 Although, at the conclusion of treatment Ms. England continued to deny that she coached the children, she admitted that some of her behavior was alienating. At the hearings in December 2017 Ms. Backe testified that Ms. England would absolutely say that she did not coach the children and would say that some of her behavior was alienating. Ms. Backe further testified that Ms. England would say today that she should have called Mr. England about some of the issues and that Ms. England would do it differently now.
Ms. England maintains that she completed court-ordered therapy and that she has sufficiently proven her ability to co-parent with Mr. England. She maintains that she never made disparaging remarks about Mr. England to the children. When asked, despite participating in therapy, whether she continues to maintain that she never made negative comments about Mr. England to the children, she answered in the affirmative. Ms. England avowed that her negative views of Mr. England did not have a harmful effect on the children. She also testified that she had not changed her opinion of whether Mr. England abused the children but, therapy had allowed her to realize that she needs to directly communicate and co-parent with him.
When applying the best interest of the child standard as directed by the twelve factors outlined in La. C.C. art. 134, a fact intensive inquiry is required; and those factors must be weighed and balanced based on the evidence presented. Hilkirk , 2015-0577, p. 36, 183 So.3d at 751 (citing Lannes , 2007-0345, p. 4, 977 So.2d at 1121 ). It is apparent from her testimony that Ms. England has not fully grasped the severity of her behavior. Although, Ms. England argues that joint custody should be reinstituted because she has completed the requirements of the March 30, 2017 judgment, the trial court was not tasked simply with determining whether she complied with the judgment. The trial court's task goes further and it must ensure that the best interest of the children remain paramount. The trial court's reasons for judgment provided:
[D]uring Ms. England's testimony, the Court did not hear any testimony regarding Ms. England's insight regarding the impact of her actions on the children, nor was there any testimony acknowledging her role in the constant conflict with Mr. England. In as such, this Court finds that it is not in the minor children's best interest to return to 50/50 shared custody at this time.
The record before this Court establishes that although Ms. England completed the court-ordered therapy, the trial court did not find that she sufficiently addressed the central issue of parental alienation. By Ms. England's own admission, she does not believe that any of her past behavior negatively influenced the children's views of their father. Although Ms. England desires this Court to take into consideration only events which unfolded after the rendition of the March 30, 2017 judgment, we would reject this request. We do not consider child custody matters in a vacuum when determining the best interest of the child. All events that potentially affect the children must be considered. The trial court weighed all the evidence presented to ensure that the circumstances surrounding custody continue to adequately serve the best interest of the children. The trial court reasoned that although Ms. England's therapy addressed co-parenting, the impact of her actions on the children was not fully addressed. As this is a factual determination, we cannot say that the trial court abused its discretion in denying Ms. England's request to return to joint custody of the minor children.
*706 Nonetheless, more than thirteen (13) months have elapsed since the rendition of the judgment awarding Mr. England sole custody. Although the trial court granted Ms. England eight hours of unsupervised visitation each Sunday, we do not find this sufficient to satisfy the requirement of reasonable visitation for the non-custodial parent under La. C.C. art. 136(A). The facts and circumstances have changed since the award of sole custody and the trial court is in the best position to make specific factual findings as to the amount of increased unsupervised visitation with the children. As such, the trial court is ordered to hold an evidentiary hearing within thirty (30) days, of the date of this opinion, to address an increase in unsupervised visitation.
Court-Ordered Therapy and Designation of Therapist
Ms. England argues that she should not be ordered to complete additional mental health counseling when additional therapy is not necessary. She maintains that the completion of her previous court-ordered therapy is sufficient as demonstrated by her ability to foster a good relationship between the children and Mr. England. Additionally, for the second time before this Court, Ms. England argues that the trial court erred in ordering her to seek counseling from a specific therapist.
The trial court determined that it must take steps to ensure Ms. England is capable of successfully assimilating into the children's lives, while simultaneously encouraging a positive relationship with Mr. England. The trial court ultimately determined that it was in the best interest of the children for Ms. England to obtain therapy specifically designated to address her alienating behavior toward Mr. England. Accordingly, we find no abuse in discretion in the trial court ordering Ms. England to complete further goal-specific therapy.
However, as previously opined by this Court, the trial court has no authority to order an individual to seek therapy with a specific therapist. England , 2017-0493, 2017-0498, p. 10, 238 So.3d at 1071. As such, we vacate the portion of the trial court's judgment ordering Ms. England to seek therapy specifically from Daliah Bauer, Ph.D.
Conclusion
For the foregoing reasons, we vacate the portion of the judgment that orders Ms. England to seek treatment from a specific therapist and remand the matter for an evidentiary hearing within thirty (30) days, of the date of this opinion, to address an increase in unsupervised visitation.
JUDGMENT VACATED IN PART, AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS

Numerous writ applications and appeals have been filed with this Court regarding different issues throughout this litigation. See e.g. England v. England , 2016-0936, 2016-1229 (La.App. 4 Cir. 6/28/17), 223 So.3d 582 ; and England v. England , 2017-0493, 2017-0498 (La.App. 4 Cir. 3/2/18), 238 So.3d 1064, writ denied , 2018-0515 (La. 5/11/18), 241 So.3d 1008.

Ms. England previously filed three separate petitions for protection from abuse against Mr. England. The first petition for protection from abuse, filed October 27, 2014, was dismissed with prejudice after a consent judgment was entered into by the parties. The second and third petitions for protection from abuse, filed March 4, 2015 and May 21, 2015 respectively, were dismissed with prejudice after trials were conducted.

At the time of the filing of this rule, the March 30, 2017 judgment was still on appeal. By the time this Court's opinion was rendered and our order vacating the requirement to utilize a specific therapist was issued, Ms. England had completed her court-ordered therapy with Ms. Backe.

As noted above, the trial court did not have the benefit of our March 2, 2018 opinion when it rendered judgment.

The judgment provides that after Ms. England addresses these issues in therapy, she may petition the court for an increase in visitation time, as well as, a modification of the temporary sole custody order.

The Louisiana Legislature, during the 2018 Regular Session, amended La. C.C. art. 134. The amendment does not have an effect on the analysis in this opinion.

We note that prior to the 2018 amendment this factor was number ten of La. C.C. art. 134.

Ms. Backe testified that court ordered therapy terminated July 28, 2017, but that Ms. England voluntarily continued therapy with her until October 30, 2017.