BLEICH, J. (Ad Hoc)
This appeal is from the trial court's custody judgment that awarded the parties, *1258 Tian Vonte Wylie ("Tian") and Emily Michelle Wylie (now Snyder) ("Emily"), joint custody of their minor daughter Samaya ("Maya"). The judgment is based, inter alia , upon the court's findings that Emily had engaged in tactics and behaviors constituting parental alienation that had almost destroyed the father-daughter relationship between Tian and Maya and granted Tian's request to relocate Maya to Florida. The judgment gave primary physical custody and domiciliary status to Tian, ordered that Tian and Maya undergo reunification therapy and, following completion of therapy and counseling specifically dealing with parental alienation issues, awarded Emily specified periods of visitation with Maya. For the reasons set forth below, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL BACKGROUND
Tian and Emily were married on July 19, 2005. At the time of the marriage, Emily had three children, one of whom lived with Emily's mother. The other two children lived with Tian and Emily. During the Wylies' marriage, a daughter, Maya, was born on December 10, 2007. Because of an extramarital affair on the part of Emily with the couple's recently widowed neighbor, Tian and Emily separated. Tian filed a petition for divorce on December 22, 2015, and he filed an amended petition on February 18, 2016, seeking a divorce on the grounds of adultery. The parties were divorced on July 1, 2016.
There were several interim custody orders issued, as well as a series of mental health experts, including a parenting coordinator, appointed by the trial judge. The judge recognized early in this matter the emotional damage and distress the minor child was sustaining, as well as her sudden rejection of any type of relationship with Tian, making a valiant effort to address these issues by having the parties and Maya undergo psychological testing and participate in counseling.
The hearing for the initial setting of custody was held over three days: July 9, August 31, and September 20, 2018. Because of Tian's move to Florida due to a military assignment, in addition to focusing on the issue of which parent would provide the most stable and suitable home for Maya, the trial court also had to decide a related issue, whether to grant Tian's request that Maya relocate to Florida to live with him. After considering the testimony and documentary evidence, the trial court issued a detailed, most thorough written opinion setting forth its findings on October 22, 2018, and on December 7, 2018, signed a judgment awarding the parties joint custody, with Tian being named domiciliary parent, and granting Tian's request for Maya's relocation.[1] It is from this judgment that Emily has appealed.
DISCUSSION
Emily asserts on appeal that the trial court erred in finding that relocation was in the best interest of Maya, thus modifying the custodial arrangement the parties were at the time following under an interim order, which was equal and shared custody, with Emily as primary domiciliary parent and Tian having visitation during the summer and holiday periods.
A parent seeking to relocate the principal residence of a minor child has the burden of proving that the proposed relocation is in good faith and that the proposed relocation is in the best interest of the child. La. R.S. 9:355.10 ;
*1259 Hernandez v. Jenkins , 12-2756 (La. 6/21/13), 122 So.3d 524 ; Curole v. Curole , 02-1891 (La. 10/15/02), 828 So.2d 1094 ; Blake v. Morris , 51,402 (La. App. 2 Cir. 6/30/17), 222 So.3d 1277, writ denied , 17-1334 (La. 9/15/17), 225 So.3d 478. La. R.S. 9:355.14 provides 12 factors that the court must consider in determining whether the proposed relocation is in the best interest of the child as well as other relevant factors. Blake, supra.
A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Gathen v. Gathen , 10-2312 (La. 5/10/11), 66 So.3d 1 ; Curole, supra . Upon review, the entire record reflects that the trial court properly considered all of the factors mandated by La. R.S. 9:355.14 (formerly designated as La. R.S. 9:355.12 ). The trial reasonably concluded, based upon the totality of the circumstances, that relocation would be in the child's best interest. Gathen, supra . While La. R.S. 9:355.14 requires consideration of all 12 factors, it does not direct the court to give preferential consideration to any certain factor or factors. Id. ; Curole, supra ; Payne v. Payne , 41,049 (La. App. 2 Cir. 5/19/06), 930 So.2d 1181, writ denied , 06-1871 (La. 8/9/06), 935 So.2d 130.
In the instant case, neither party argued or directly addressed, either at the trial court or appellate level, La. R.S. 9:355.10's requirement that the parent seeking to relocate must prove that the proposed relocation is in "good faith," an inquiry separate and apart from the determination of whether the relocation is in the child's best interest. Jurisprudence has defined the meaning of "good faith" in the context of relocation as a legitimate or valid reason for the move. See, Mathes v. Faucheux , 17-0329 (La. App. 4 Cir. 8/9/17), 226 So.3d 503 ; McLain v. McLain , 07-0752 (La. App. 4 Cir. 12/12/07), 974 So.2d 726. Legitimate reasons for relocation include: to be close to significant family or other support networks; for significant health reasons; to protect the safety of the child or another member of the child's household from a significant risk of harm; to pursue a significant employment or educational opportunity; or to be with one's spouse (or equivalent) who is established, or is pursuing a significant employment or educational opportunity in another location. Gathen, supra ; Mathes, supra ; McLain, supra.
In his "Motion to Authorize Relocation of the Minor Child," Tian asserted that he was being relocated by the U.S. Air Force to Patrick Air Force Base in Brevard County, Florida, at the end of August 2017, and that this relocation was an advancement in his career. He further averred that relocation of Maya would provide her with, inter alia , a positive role model with a successful career, the stability that comes from such a career, and financial benefits. The following testimony by Tian at trial was undisputed :
• Tian moved to Florida in August 2017 after completing officer training school in Alabama. He relocated to Florida then because the time had come where he either had to leave Barksdale or get out of the military.
• All of his employment offers were out of state ; he had offers in Virginia, Mississippi, Tennessee, and Florida. He decided to stay with the military to have some consistency-that is how he ended up in Florida. The opportunity to become an officer was a good one; he makes more money and can provide more opportunities for Maya.
• Tian's move to Louisiana was never intended to be permanent, but was a temporary assignment with the military.
*1260 • Tian stated that neither he nor Emily was a big fan of Barksdale originally; they were concerned about the schools and cultural issues they might face with them being an interracial couple. There has always been a desire to get out of Barksdale/Bossier, not necessarily to go to Florida.
• Tian remained in Bossier for more than a year after he and Emily separated, and nothing got better. Everyone went to counseling, which, as Dr. Evans testified, did not work. The parenting coordinator appointed by the trial court failed to change anything either.
We find that the record supports the trial court's implicit determination that Tian's proposed relocation of Maya was in good faith. See, e.g., Atkins v. Atkins , 47,563 (La. App. 2 Cir. 9/26/12), 106 So.3d 614 ; Payne, supra ; State ex rel. Dept. of Social Services v. Whittington , 15-1118 (La. App. 4 Cir. 5/18/16), 193 So.3d 1234 ; Cass v. Cass , 10-327 (La. App. 3 Cir. 11/17/10), 52 So.3d 215, writ denied , 11-0178 (La. 2/25/11), 58 So.3d 460.
The trial court found that relocation to Florida was in Maya's best interest after an extensive analysis of the factors set forth in La. R.S. 9:355.14. Since this was also the initial custody setting, the trial court's judgment awarded the parties joint custody, named Tian domiciliary parent, and awarded Emily liberal periods of visitation with Maya, with specific details set forth in a JCIP. The following is excerpted from the trial court's written reasons in support of judgment:
[Tian] and [Emily] were married on July 19, 2005. At the time of her marriage to Tian, Emily had three (3) separate children from three separate fathers. Emily had surrendered to her mother custody of ... [her] second child. None of those children had any meaningful relationship or communication with their respective fathers during their childhood. For Emily's other two children ... Tian was the closest thing to a father they have ever experienced. The testimony describes those relationships as close and Tian as a provider and interested person in their lives despite the lack of any biological relationship.
During the marriage of Tian and Emily they were blessed with the birth of a daughter, Samaya, born December 10, 2007. Samaya was reared by Tian and Emily until the two separated as a result of the extramarital affair of Emily with a recently widowed neighbor. The parties separated and Tian filed for divorce on December 22, 2015 ... The divorce was subsequently granted. The trial focused, due to the relocation of Tian to Florida with a military assignment, on the issues of which parent would provide the most stable and suitable home for the child, and the issue of possible relocation of Samaya.
In addition to Tian and Emily, testimony and evidence was provided from Dr. Robert Clanton, Ph.D., (who also relied upon the records of Shelly Booker [a mental health counselor appointed by the court to perform mental health evaluations of the parties and Maya] ) who interviewed with the parties and the minor child; Dr. Robert Evans, Ph.D., who testified on the issues of parental alienation in custody proceedings; and voluminous exhibits and records including, but not limited to, records from the Gingerbread House of investigation of allegations of abuse by Tian; and records from Barksdale Air Force Base investigating allegations of abuse by Tian.
The Court, in attempting to fashion a plan going forward for this innocent child caught in an ugly and lengthy custody fight and alienation is guided by the applicable jurisprudence and the provisions of La. R.S. 9:355.14 regarding *1261 this contested relocation. A review of each of those considerations and the facts and evidence in this matter follow:
La. R.S. 9:355.14 provides, "In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child ..."
(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
Samaya was born to Tian and Emily during their marriage and resided with both of them in the family home until the separation of her parents. Her relationship with both parents was close her entire life until the separation and divorce. The nature, quality, extent of involvement, and duration of the relationships with her parents are equal until Emily moved in with [Mike Snyder,] who became her current husband. Any issues of alienation will be addressed below. The parties stand equally before this Court in this consideration. There is no impediment to relocation.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
Samaya will turn eleven (11) years old ... She is doing well in school and appears to be progressing and enjoys extracurricular activities. Considering her age, developmental stage, and her needs, the Court finds no impediment to relocation. The educational opportunities and extracurricular activities offered in Florida and Louisiana are comparable. The parties stand equally before the Court in this consideration.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
Emily and Tian both love their daughter. The Court is confident the parties will take whatever steps are necessary to maintain a close relationship with their daughter, and that a combination of physical custody and the use of technology, whichever parent is not the domiciliary parent the relationship of the non-domiciliary parent would remain as close as circumstances permit. The parties stand equally before the Court in this consideration.
(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.
Samaya is just too young and the current relationship between her and Emily is such that the Court did not believe it in the best interest of Samaya, the parties, or justice to have Samaya testify. The parties stand equally before the Court in this consideration; however, the Court is confident Samaya would have expressed a desire to remain with her mother. Whether that was her voice or the echo of what she lives in daily was a consideration in not having Samaya have to testify.
(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
*1262 The record in this matter is replete with instances of actions by Emily to alienate Samaya from her father. The evidence adduced and the notes of those working with these parties tell an alarming tale of a consistent, concerted, and complex effort by Emily to alienate Samaya from her father Tian. Many instances, no doubt, Emily undertook actions possibly without the specific intent of alienation, but the obvious and predictable result of alienation cannot be ignored by the Court.
The Court was very impressed with Dr. Clanton's observations in this matter. There was a ready acknowledgement of the alienation in this matter, and while Dr. Clanton opined the alienation may or may not be intentional, he conclusively found alienation of Samaya from Tian to exist.... Dr. Clanton further testified that if the alienation was intentional, or if the alienation continued, that he recommended that Samaya be relocated to Florida. The issue the Court must address is whether or not there is a risk of continued alienation, intentional or otherwise.
Clearly there is alienation of Samaya from Tian. In reaching a conclusion as to whether the alienation will occur, the Court considered the environment Samaya would be placed in if she remains with her mother, Emily, and not with her father, Tian. That environment is not conducive [to] rebuilding and supporting a relationship with her father. It is not a coincidence that none of Emily's other children [have] meaningful relationships with their fathers. The current environment, with Emily immediately moving in with a very recently widowed neighbor who is several years her senior, is not an idea endorsed by Dr. Clanton, who confirmed the situation is far from ideal and unlikely to be sustainable long-term.
The Court is concerned about the long history of Emily making decisions with little or no concern for the impact on others in her life.... Emily's decision, while married to Tian, to initiate a romantic relationship with her recently widowed neighbor and to get complementing matching tattoos with this gentleman while married to Tian while she and Samaya continued to live with Tian is astonishing.
Dr. Clanton and the other professionals concluded that Emily has a tendency to become overemotional and she has involved this young child, Samaya, in the life of an adult to the extent Samaya has been imprinted with Emily's feelings and emotions towards Tian.
Emily has an established pattern of taking whatever steps she deems necessary to attempt to place herself in a better light in regards to caring for Samaya, and to attempt to destroy the appearance of any credibility or parenting ability of Tian. The reports to Barksdale Air Force Base of abuse, and the findings and observations regarding those reports, is alarming. Tian's military career appears to have been placed in jeopardy as a result of unfounded allegations with an obvious motive from Emily. The Court is convinced such a desire and efforts, overt and covert, would continue to attempt to sway and alienate Samaya from Tian. That cannot be allowed to continue. Relocation is strongly in favor of Tian, who has proven the ability and desire to provide a loving home and to foster a close relationship between Samaya and Emily, despite obvious reasons to feel otherwise. Tian is placing the needs and best interest of his daughter's long term development above his personal interests and any animosity felt towards Emily.
(6) How the relocation of the child will affect the general quality of *1263 life for the child, including but not limited to financial or emotional benefit and educational opportunity.
The jurisdiction of the Court provides the benefit of serving as the home to Barksdale Air Force Base and therefore handles many relocation matters to and from this area. Having been reared in a career military family, the benefits provided to those living on or near military institutions is well known [by the Court]. The educational opportunities of residing in Florida could serve Samaya well, including providing some emotional benefit, and there is no detriment to such a relocation on those grounds. It is noted that Samaya is a student in one of the highest ranked school districts in Louisiana and has a rigorous extracurricular activities schedule she is reportedly enjoying. The parties stand equally before the Court in this consideration.
(7) The reasons of each person for seeking or opposing the relocation.
Both Emily and Tian love Samaya. They both desire that she reside with them. The parties stand equally before the Court in this consideration.
(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
As a military officer, Tian has the financial ability and benefits available on and near the Air Force Base to which he is currently assigned to adequately care for all of Samaya's needs. There is a slight advantage in favor of Tian over Emily for relocation, including the fact that Emily is completely at the financial mercy of her new husband ... To the extent Emily's new husband is willing to provide financial support above any child support provided by Tian, as compared to Tian's earnings and benefits, there is only a marginal advantage to Tian regarding this consideration.
(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.
This consideration is inapplicable in the present matter.... The parties stand equally before the Court in this consideration.
(10) The feasibility of a relocation by the objecting person.
The relocation of Samaya to Florida would pose no unreasonable considerations and while Emily may elect not to relocate to Florida to be near Samaya there are opportunities with school and holiday breaks and summers to provide for meaningful and significant periods for Emily to enjoy physical custody of Samaya. Emily could relocate or could enjoy other periods of custody of Samaya. Under a scenario required to be contemplated in this factor, the parties stand equally before the Court in this consideration.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
There is not present in this matter any allegation of current substance abuse by either party. The issues of what can only be described as "harassment" by Emily of the reporting of unsubstantiated claims of abuse by Tian have been addressed above. There are no allegations of issues of violence of either party of *1264 any significance. Considering the apparent abuse of reporting unsubstantiated claims of violence in an effort to gain an advantage in custody considerations causes concern for the Court regarding the extent to which Emily has gone to villainize Tian in the eyes of Samaya and others. Tian has an advantage.
(12) Any other factors affecting the best interest of the child.
Samaya has two parents who love her. Unfortunately, her mother seems so determined to keep Samaya close to her that she has been willing to intentionally and possibly unintentionally (but certainly reaping the benefits of) alienating Samaya from her father. Emily's personal history and current circumstances [reflect the making of] decisions for her personal benefit and personal desires and placing those motives above the best interests of her children. Additionally, Emily has exhibited a campaign of degradation of Tian to Samaya. This pattern is concerning to the Court and in its role of determining what is in the best interest of Samaya, not something that can be overlooked or explained away. Advantage to Tian.
When considering the factors as outlined above, after reviewing and considering the evidence introduced and the testimony of the witnesses and making credibility determinations of those witnesses, and considering the concerns and observations as outlined by Shelly Booker and Thomas Davison [court-appointed mental health experts] and further considering the concerns of Dr. Clanton regarding the problems which arise in cases of alienation, the Court is of the opinion that the alienation of Samaya from her father will continue unless a change is made. Dr. Clanton testified that if alienation continues or is intentional then Samaya should be relocated to Florida. The Court accepts this recommendation and finds that Emily has acted to intentionally alienate Samaya from her father and either fails or refuses to recognize the pattern of alienation and lacks the ability to self-correct or rehabilitate that well-settled pattern of behavior....
Dr. Robert Evans, Ph.D., was recognized by the Court as an expert in the field of Psychology with a concentration in Parental Alienation. He made certain recommendations regarding programs and procedures to aid in the relocation of children, including counseling and therapy for all involved. The intensive program appears necessary for there to be any serious opportunity for success of reuniting Samaya with her father and maintaining a long term positive relationship with her mother....
The court is not required to mechanically analyze all of the factors set forth in La. R.S. 9:355.14, but should balance and weigh the factors in view of the evidence presented. England v. England , 18-0056 (La. App. 4 Cir. 7/5/18), 251 So.3d 699, 704 ; Palazzolo v. Mire , 08-0075 (La. App. 4 Cir. 1/7/09), 10 So.3d 748, 769-70.[2] As noted by the Fourth Circuit in Hilkirk v. Johnson , 15-0577 (La. App. 4 Cir. 12/23/15), 183 So.3d 731, 752, writ denied , 16-0083 (La. 2/19/16), 186 So.3d 1172, these factors are considered to be illustrative and nonexclusive, and the trial court has discretion to determine the relative amount of weight to give each factor.
We have reviewed the entirety of the record in this case. No decision dependent upon the "best interest of the child" is ever made lightly or without serious consideration of the effects it will have on the *1265 parties, most importantly the child or children involved. The task of the trial judge in this case was herculean, made particularly so by the specific facts and circumstances in this case. While both Tian and Emily are capable, loving parents to Maya, the overshadowing issue in this case, as discussed by the trial court at length in its erudite written opinion, was the deliberate and dysfunctional enmeshment between Emily and her daughter which manifested itself in a plethora of alienating tactics on the part of Emily, and resulted in the disruption and almost complete severance of the father-daughter relationship between Tian and Maya. The record fully supports the trial court's determination that it was in the best interest of Maya that she be allowed to relocate to Florida and that Tian be awarded primary, domiciliary custody.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed against Defendant-Appellant, Emily Michelle Wylie Snyder.
AFFIRMED.

A Joint Custody Implementation Plan ("JCIP") setting forth the details of the custodial arrangement was signed by the trial court on December 12, 2018.

In both England, supra, and Palazzolo, supra , the Fourth Circuit discussed the issue of parental alienation and the role it played in each custody case, specifically in the significant effect it had in each trial court's best interest of the child analysis.